IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

OKLAHOMA PROCURE )
MANAGEMENT, LLC, )
 )
        Plaintiff, )
 )
v. ) No. CIV-12-680-L
 )
KATHLEEN SEBELIUS, )
SECRETARY OF THE UNITED )
STATES DEPARTMENT OF )
HEALTH AND HUMAN SERVICES, )
 )
        Defendant. )

## **O R D E R**

Oklahoma ProCure Management, LLC ("ProCure") owns and operates a stand-alone proton therapy center located in Oklahoma City. Proton therapy treatment is an advanced form of radiation that minimizes damage to healthy tissue. ProCure is one of the few independent proton treatment centers in the country. On June 15, 2012, ProCure filed this action seeking judicial review of a final agency decision that, in effect, denied it additional reimbursement for services rendered to 52 Medicare beneficiaries. In her answer, Kathleen Sebelius, who is named in her official capacity as the Secretary of the Department of Health and Human Services, challenged the court's subject matter jurisdiction. On November 27, 2012, ProCure filed a motion asking the court to determine whether subject matter jurisdiction over this action exists. Thereafter, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). The court held a hearing on both motions on February 27, 2013.

Based on the parties' briefs, the administrative record, and the arguments presented at the hearing, the court makes the following rulings.

The Medicare Act, established under Title XVIII of the Social Security Act, pays for covered medical care to eligible individuals. This action concerns payments under Part B of the Act, which provides supplementary medical insurance for covered medical services such as doctors' visits, diagnostic testing, or treatment. The Medicare program is administered by the Centers for Medicare & Medicaid Services, also known as CMS. CMS, in turn, hires private contractors to administer the program in various geographic regions. At all times relevant to this case, TrailBlazer Health Enterprises, LLC ("TrailBlazer") was the contractor or carrier for Jurisdiction 4, which had responsibility for Oklahoma, Texas, Colorado, and New Mexico.[1]

Under Medicare Part B, services prescribed by physicians are billed under a Common Procedure Coding System, also known as HCPCS codes. Each code in the fee schedule has an indicator that represents the payment policy for the code. Payment amounts for the various codes are either determined by CMS[2] on a national basis or by the various regional contractors for the providers in their areas.

---

[1] On November 9, 2011, Novitas Solutions, Inc. was awarded the contract for this jurisdiction. The transition from TrailBlazer to Novitas became effective November 19, 2012. *See* http://www.cms.gov/Medicare/Medicare-Contracting/MedicareContractingReform/Downloads/AB_MAC_Jurisdictions/Jurisdiction_H/JH_Implementation_Schedule.html (last accessed on Feb. 21, 2013).

[2] Payment amounts established by CMS are published in the Medicare Physician Fee Schedule. This Schedule also indicates which services are carrier-priced.

It is undisputed that the codes at issue in this case[3] have Status Indicator "C", which means the payment amount is to be established by the regional contractors. Medicare Claims Processing Manual, ch. 12, § 20.2. TrailBlazer thus was tasked with establishing payment amounts for the codes based on "local relative values" or "a flat local payment amount". Id. Which methodology to use in these circumstances is left up to the contractor, that is, TrailBlazer. If a relative value unit or RVU is established for a service, the fee schedule amount is determined by multiplying the RVU by a geographic adjustment factor and a conversion factor.[4] 42 C.F.R. § 414.20(a). Medicare then reimburses the provider the fee schedule amount or the actual charge, whichever is less. 42 C.F.R. § 414.21.

In this case, ProCure sought additional payment for its delivery of proton therapy to a number of patients from March 5, 2010 to July 13, 2010. While TrailBlazer found the services were medically necessary and made payments on the claims, it did not reimburse ProCure to the extent requested by ProCure. ProCure therefore appealed TrailBlazer's payment decision through the administrative process, which culminated in a hearing before an Administrative Law Judge ("ALJ") on June 11, 2011. On June 22, 2011, ALJ Don W. Joe issued a decision in which he found that TrailBlazer "established a Relative value unit (RVU) code for each item

---

[3]The codes are 77522, 77523, and 77525.

[4]While the contractor determines the local RVU, CMS provides the geographic adjustment factor and the conversion factor. 42 C.F.R. §§ 414.26, 414.28.

at issue. The RVU code methodology was emailed to [ProCure] by Dr. Charles Haley, Medical Director of Trailblazer Health, on December 11, 2009." Administrative Record at 176. Based on this finding of fact, the ALJ determined he did not have jurisdiction to review ProCure's appeal. Id. at 184. Procure appealed this decision to the Medicare Appeals Council, which concluded that TrailBlazer's reimbursement of ProCure's claims was not an "initial determination" within the meaning of the regulations and therefore the ALJ had no jurisdiction to consider ProCure's appeal. Id. at 14. The Council reasoned that

> TrailBlazer had, in fact, determined a local RVU for the services in question, and thus established a payment amount of program reimbursement of general applicability for which it had sole responsibility. This is true regardless of whether TrailBlazer had published on its website a fee schedule amount, *per se*, for Oklahoma for the codes at issue, as all of the elements would have been in place for such calculations when multiplied by the CMS pre-assigned geographic adjustment and conversion factors.

Id. The Medicare Appeals Council therefore vacated the ALJ decision and dismissed ProCure's request for a hearing. Id. at 15. ProCure then appealed to this court, seeking declaratory judgment and judicial review of the Council's decision.

The court must first determine whether it has jurisdiction to consider this appeal.[5]

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial

---

[5] "[A] federal court always has jurisdiction to determine its own jurisdiction." United States v. Ruiz, 536 U.S. 622, 627 (2002).

> attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

ProCure alleges the court has jurisdiction under the Medicare Act, 42 U.S.C. § 1395ff, and the Administrative Procedure Act. Complaint at ¶ 2 (Doc. No. 1). In addition, ProCure argues the court has federal question jurisdiction under 28 U.S.C. § 1331 and mandamus jurisdiction under 28 U.S.C. § 1361. Defendant contends subject matter jurisdiction is lacking because the Medicare Act specifically provides "[t]here shall be no administrative or judicial review under section 1869 [42 U.S.C. § 1395ff] or otherwise of . . . the determination of relative values and relative value

units". 42 U.S.C. § 1395w-4(i)(B). The issue, then, is whether TrailBlazer established RVUs for the codes at issue, a question that is intertwined with the merits of the case. The court therefore will treat defendant's motion to dismiss as a motion for summary judgment.[6]

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, the plain language of Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[6]ProCure's assertion that the court must accept the factual matters alleged in the complaint as true is incorrect. Defendant has not mounted a facial attack on the court's subject matter jurisdiction; rather, defendant has challenged the facts on which jurisdiction depends.

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Judicial review of defendant's decision, as reflected in the Medicare Appeals Council's ruling, is governed by 42 U.S.C. § 405(g). See 42 U.S.C. § 1395ff(b)(1)(A) (incorporating § 405(g)). Under § 405(g), the court's review of the Council's ruling is limited to determining "whether it is supported by substantial evidence and whether the [Council] applied the correct legal standard." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). In making this determination, the court must closely examine the record as whole. See Andrade v. Secretary of Health and Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir.2007) (citations omitted).

Based on these standards, the court concludes the Medicare Appeals Council's finding that TrailBlazer established RVUs for the codes at issue is not supported by substantial evidence. In support of its finding, the Council cited two pieces of evidence. The first is a December 11, 2009 e-mail from Charles Haley, TrailBlazer's Medicare Medical Director at the time, to Chris Chandler at ProCure and others. Administrative Record at 8-9, 280-81. The second is a series of identical letters sent by Charlene Frizerra, Acting Administrator of CMS, to Oklahoma's governor and its Congressional delegation. Id. at 282-97. Neither piece

of evidence, however, is adequate to support the Council's conclusion that TrailBlazer established RVUs for the codes at issue here.

First, the December 2009 e-mail does not include RVUs for any of the codes at issue. Rather, it only reflects "the 2009 *fees* for each Medicare part B contractor that pays for proton beam radiotherapy." Id. at 280 (emphasis added). There is no indication whether such fees are the result of the RVU process or whether they represent a flat local payment amount. Moreover, it appears that TrailBlazer did not know the provenance of the fees, as Dr. Haley states that he "*estimated* the current RVUs that these contractors *could* be using to arrive at these fees." Id. at 281 (emphasis added). At no point in the e-mail does Dr. Haley specify what RVU TrailBlazer has set for the three codes, nor how such alleged RVUs were calculated. Second, while the form letters from Ms. Frizerra reflect that "TrailBlazer chose to establish local relative values for these codes, and did so when these services were first provided in Texas",[7] the letters likewise do not disclose either the alleged RVUs or the methodology used to calculate them.

Moreover, the most telling evidence that TrailBlazer did not establish RVUs was not discussed by the Council or the ALJ. The record reflects that TrailBlazer paid different amounts for the same services provided by ProCure during 2010 and

---

[7]Administrative Record at 283. It is noteworthy that the record does not reflect any Texas fee payment for two of the codes at issue here. Rather, the only evidence is that "for Texas, only 77523 is in the data since that is all M.D. Anderson bills." Id. at 281. The majority of the claims at issue in this action concern code 77522.

2011.  For example, on May 12, 2010, TrailBlazer paid $654.46 for proton therapy billed under code 77522.  Administrative Record at 170.  For the same services rendered in July 2010, however, TrailBlazer paid $669.00 under code 77522.  Id. at 171.  In March 2011, TrailBlazer paid $617.93 for code 77522 and $642.12 for code 77523, while in June 2011, the payments were $670.52 and $696.73, respectively.  Id. at 172-73.  The record reflects no reason for these discrepancies.

In sum, the court concludes that the Medicare Appeals Council's finding that TrailBlazer established RVUs for the codes and time period at issue here is not supported by substantial evidence.  As a result, this action is not barred by 42 U.S.C. § 1395w-4(i)(B); the court therefore has subject matter jurisdiction.  Thus, Plaintiff's Motion to Determine Subject Matter Jurisdiction (Doc. No. 22) is GRANTED, and Defendant's Motion to Dismiss (Doc. No. 24) is DENIED.  The decision of the Medicare Appeals Council is REVERSED and this matter is REMANDED to the Secretary to compute the reimbursement amounts owed to Procure.  Judgment will issue accordingly.

It is so ordered this 4th day of April, 2013.

_____
TIM LEONARD
United States District Judge